IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 10-CV-24011-KING

MANUAL VELA and
CARLA VELA,

      Plaintiffs,

v.

SEARS HOLDING CORPORATION, INC., *et al.*

      Defendants.
_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**THIS MATTER** comes before the Court upon the Defendant's Motion for Summary Judgment (DE #29), filed August 8, 2011. The Court is fully briefed on the matter.[1]

### I. BACKGROUND

Plaintiffs Manuel Vela and Carla Vela allege various causes of action against Defendant Sears Holding Corporation, Inc.[2] ("Sears") sounding in strict liability, negligence, breach of

---

[1] The Defendant's Motion for Summary Judgment was accompanied by a Memorandum of Law. (DE #30). The Plaintiff filed a Response to Defendant's Motion for Summary Judgment on August 31, 2011. (DE #37). The Defendant filed a Reply on September 6, 2011. (DE #39).

[2] The Amended Complaint names two additional Defendants: MTD Products, Inc. and Rhina Molinares Rubio. The Court dismissed Rubio from the case on November 23, 2010. (DE #10), and the Plaintiffs never served MTD Products, Inc. Accordingly, the above-styled action proceeds against Sears alone as the remaining Defendant.

warranty, and loss of consortium.[3] All of the claims rely on the Plaintiffs' underlying allegation that Plaintiff Manuel Vela was injured by an allegedly defective lawn mower sold by Sears. Plaintiffs allege that the mower had a defect whereby when Manuel Vela pulled the mower backwards, the blade hit the plastic trail shield, which had been sucked under the mower, bending the blade and causing the screw that affixed the blade to the mower to break and fly out from under the mower and into Manuel Vela's leg. Defendant's theory is that there was no defect and that the incident occurred because Manuel Vela improperly drove the mower over a hard object, which caused the blade to bend and the screw to break. (DE #32-2, at 2, ¶ 8).

Upon review of the admissible evidence on the record and the Parties' briefs, the following facts are undisputed. On April 30, 2010, Manuel Vela purchased a new Craftsman 22" lawn mower, Model No. 247.38528, at the Sears Southland Mall Store in Miami, Florida. (DE #25, at 13). The mower complied with all applicable government and industry standards, and nothing was missing from the mower when Manuel Vela first used the mower at his house. (DE #30-2, at 2, ¶ 5; DE #30-1, at 49).

On May 4, 2010, Manuel Vela received medical treatment for an abrasion and soft tissue injury located on the posterior of his right knee. (DE #25, at 17). Manuel Vela testified at deposition that he received the injury while he was using the lawn mower he purchased at Sears.

> So what happened was as I came on that turn, that particular turn, as I began to pull it backwards the lawn mower suddenly shook really violently. As I was lining it up it just shook violently and it made this noise and I was terrified. I thought it was going to explode. I never experienced anything like that, the sudden shake. So what I did was, you know, scared that it was going to explode, I immediately pushed away

---

[3] The Amended Complaint sets forth the following claims: Strict Liability (Count I); Strict Liability Failure to Warn (Count II); Negligence (Count III); Breach of Implied Warranty (Count IV); Breach of Implied Warranty of Fitness for a Particular Purpose (Count V); and Loss of Consortium (Count VIII). The Court previously dismissed Counts VI and VII and a claim for punitive damages. (DE #28).

and I started running in the opposite direction.

(Deposition of Manuel Vela, DE #30-1, at 55–56). He ran sideways a couple of feet away from the lawn mower and, while his back was facing the lawn mower, he "felt something [strike him] behind the knee . . . ." (DE #30-1, at 61–62). The impact of the object caused him to collapse on the ground and he was bleeding. (DE #30-1, at 63). Manuel Vela claims that immediately after the alleged injury, he saw a broken screw lying in the grass and covered in blood. (DE #30-1, at 68, 93–94). He did not retrieve the broken screw from the grass until a couple of days later. (DE #30-1, at 69). He then claims he washed the blood off the broken screw. (DE #30-1, at 69).

Manuel Vela testified that immediately following the incident the plastic trail shield was damaged and that the blade was bent. (DE #30-1, at 85). After this action was filed, Sears had the lawn mower inspected by Daniel Martins, the Vice President of Product Development and Safety for MTD, the manufacturer of the mower. Martins submitted an affidavit on his post-incident inspection of the mower. Martins confirmed that the mower's blade was bent, that the plastic trail shield was damaged, and that the screw that affixes the blade to the mower was broken. (DE #30-2, at 1, ¶ 4).

Now, Plaintiffs Manuel Vela and Carla Vela allege claims in strict liability, negligence, warranty, and loss of consortium against Defendant Sears. All of the claims turn on the Plaintiffs' underlying allegation that the mower was defective and "experienced a catastrophic failure." (Am. Compl., DE #25, ¶15). With the motion for summary judgment, the Defendant argues that the Plaintiffs have failed to produce in the record any admissible evidence to prove their theory that the mower was defective. Specifically, the Defendant argues that expert testimony is required to establish a defect and that the Plaintiffs' exclusive reliance on inadmissible lay testimony as to the mower's alleged defect is fatal at the summary judgment stage. In response, Plaintiffs argue that

Plaintiff Manuel Vela is qualified to testify as a lay witness on his theory of the mower's defect based on his own "rational perception" of the events that occurred.

## II. LEGAL STANDARD

On a motion for summary judgment, the moving party bears the burden of pointing to the part of the record that shows the absence of a genuine issue of material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). Once the moving party establishes the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *see also Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991) (holding that the nonmoving party must "come forward with significant, probative evidence demonstrating the existence of a triable issue of fact."). The Supreme Court has recognized two grounds for summary judgment. The first is where the pleadings and supporting materials establish that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Celotex*, 477 U.S. at 322. The second is where, after adequate time for discovery, a party fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322–23. The above-styled case comes within the second ground for summary judgment whereby Plaintiffs have failed to produce sufficient admissible evidence on a vital element of the claims.

## III. ANALYSIS

As is well-settled, Plaintiffs have the burden of proof as to the elements of their various

claims. Counts I, II, III, IV, and VIII sound in strict products liability,[4] negligence,[5] warranty,[6] and loss of consortium.[7] All of these claims hinge on whether the product was defective. Upon careful review of the pleadings and the record, the Court finds that the Plaintiffs, after nine months of discovery, have failed to produce sufficient admissible evidence of a defect with the mower. Insufficient admissible evidence on the existence of a defect is fatal to Plaintiffs' claims. *See, e.g., Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1295–96 (11th Cir. 2005) (affirming summary judgment

---

[4] For strict product liability, a plaintiff must prove that: 1.) a product; 2.) sold by a defendant that "is engaged in the business of selling such a product;" 3.) was "in a defective condition unreasonably dangerous to the user;" 4.) proximately caused; an 5.) injury. *West v. Caterpillar Tractor Co.*, 336 So.2d 80, 84 (Fla. 1976); *see also Norton v. Snapper Power Equip., Div. of Fuqua Indus., Inc.*, 806 F.2d 1545, 1548 (11th Cir. 1987).

[5] For negligence in products liability, "the plaintiff must prove by a preponderance of the evidence that his injury was proximately caused by the manufacturer's breach of its duty to produce a product reasonably safe for use." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1295 (11th Cir. 2005). In essence, in the context of products liability, a plaintiff asserting negligence cannot prove breach without proving defect.

[6] "The elements to prove liability under an implied warranty theory are: (1) That the plaintiff was a foreseeable user of the product; (2) That the product was being used in the intended manner at the time of the injury; (3) That the product was defective when transferred from the warrantor; and (4) That the defect caused the injury." *Amoroso v. Samuel Friedland Family Enters.*, 604 So.2d 827, 833 (Fla. Dist. Ct. App. 1992) (internal citations omitted), *aff'd*, 630 So.2d 1067 (Fla. 1994).

An action for breach of implied warranty of fitness for a particular is governed by Florida statute:

> Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that *the goods shall be fit for such purpose*.

Fla. Stat. § 672.315 (2010) (emphasis added).

[7] The Amended Complaint alleges that the loss of consortium claim is premised on the "wrongful and negligence acts of Defendant[] Sears." (Am. Compl., DE #25, ¶ 46). As such, Plaintiffs' success on loss of consortium claim necessarily relies on their success on the products liability and negligence claims.

Case 1:10-cv-24011-JLK Document 42 Entered on FLSD Docket 10/06/2011 Page 6 of 9

on strict liability and negligence claims where plaintiffs offered no admissible evidence on the existence of a defect). Accordingly, the Court finds summary judgment in favor of the Defendant is appropriate. *See Celotex*, 477 U.S. at 322–23.

The significance of admissible evidence on the existence of a product defect is illustrated in *Rink v. Cheminova, Inc.* In *Rink*, the plaintiffs brought both strict products liability and negligence claims against a defendant who allegedly produced defective pesticide that caused injury to the plaintiffs. 400 F.3d at 1288–89. The only evidence the plaintiffs produced on the alleged defective nature of the pesticide was the proffered testimony of their proposed expert witness. *Id.* at 1289–91. The district court judge excluded the proffered testimony of the plaintiffs' proposed expert, finding that the proposed expert did not satisfy the *Daubert* standard. *Id.* at 1289–94. Without the proposed expert testimony on the allegedly defective pesticide, the district court granted summary judgment in favor of defendants because the plaintiffs could not satisfy the causation element of their strict liability and negligence claims. *Id.* at 1294. On appeal, the plaintiffs argued that despite the exclusion of their proposed expert testimony on defect, the plaintiffs could have proved causation based on the plaintiffs' treating doctors' testimony that the pesticide was the most likely cause of the plaintiffs' injuries. *Id.* at 1294. Ultimately, the Eleventh Circuit affirmed summary judgment for the defendant where "the requisite proof of causation was lacking without expert testimony." *Id.* at 1288. In so holding, the Eleventh Circuit instructed that in the context of both strict products liability and negligence in products liability, before a plaintiff can present evidence of causation, the plaintiff must first prove that the product was defective. *Id.* at 1295.

Here, like in *Rink*, the Court finds that the insufficient evidence of defect on the record warrants summary judgment in the Defendant's favor. As proof of defect, the Plaintiffs offer only

the physical evidence of the mower itself and Manuel Vela's testimony. The Court finds that the physical evidence is admissible, and notes that the Parties do not dispute that the mower's blade is bent, that the plastic trail shield is damaged, and that the screw that affixed the blade to the mower was broken. (DE #30-2, at 1, ¶ 4). The Parties do dispute, however, how it is that the mower's blade was bent in such a way as to break the screw so that a piece of it flew out of the mower and into Manuel Vela's leg—Plaintiffs allege the mower was defective and the Defendant blames misuse by the Plaintiffs. As previously stated, Plaintiffs have the burden to prove the existence of a defect.

Although Plaintiffs offer Manuel Vela's detailed theory on how the mower malfunctioned, Plaintiffs have produced no admissible evidence in support of their theory on the defect. (DE #30-1, at 85–87). As a lay witness, Manuel Vela is entitled to testify as to his rational perception of the incident—e.g., what he saw, what he heard, and what he felt physically. FED. R. EVID. 701(a). The Court finds, however, that Plaintiff Manuel Vela's proffered testimony on his opinion of how the mower malfunctioned is inadmissible as lay opinion testimony "based on scientific, technical, or other specialized knowledge within the scope of Rule 702." FED. R. EVID. 701(c) advisory committee's notes (Rule 701 was amended to include subsection (c) to "eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing."). Plaintiffs concede that Manuel Vela is a lay witness and offer no evidence, aside from Manuel Vela's 30 years' experience using walk-behind mowers, of any "sufficient experience or specialized knowledge" to render Manuel Vela competent to testify on a mechanical defect in the lawn mower. *See Asplundh Mfg. Div., a Div. of Asplundh Tree Expert Co. v. Benton*, 57 F.3d 1190, 1193, 1201–02, 1204 (3d Cir. 1995) (reversing district court's allowance of lay testimony on a metal defect in a hydraulic cylinder where the lay witness's only

qualification was his work experience and he lacked any formal education in material failures or metal fatigue). Without Manuel Vela's lay testimony on his opinion of how the mower malfunctioned, there is no evidence on the record to prove Plaintiffs' theory of the defect.

The Court finds that the physical evidence of the mower, absent any admissible explanation of the alleged defect, is insufficient to prove defect. Further, as explained in *Rink*, the existing admissible testimony on causation, whether by Manuel Vela or his treating doctors, does not constitute proof of defect. *Rink*, 400 F.3d at 1295. Accordingly, the Court finds that the Plaintiffs are unable to meet their burden at trial to prove defect by a preponderance of the evidence, therefore summary judgment in favor of the Defendant is appropriate.

## IV. CONCLUSION

The Court finds that after a consideration of the admissible evidence on the record that Plaintiffs have failed to satisfy their burden of proof on the existence of a defect as fatal to the strict liability, negligence, and warranty claims. Further, the claim for loss of consortium necessarily relies on the survival of the underlying strict liability and negligence claims. Therefore, the Court finds that Defendant Sears, as a matter of law, is not liable to Plaintiffs Manuel Vela and Carla Vela for any of their claims premised on the alleged defective mower.

Accordingly, upon a careful review of the record and for the foregoing reasons, it is hereby **ORDERED, ADJUDGED, and DECREED** as follows:

1. Defendant's Motion for Summary Judgment **(DE #29)** be, and the same is hereby, **GRANTED.**

2. The above-styled action is **DISMISSED with prejudice.**

3. The Clerk is directed to **CLOSE** this case.


4. All pending Motions are **DENIED as moot.**

**DONE AND ORDERED** in Chambers, at Miami, Miami-Dade County, Florida, this 6th day of October, 2011.

*[signature]*
JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF FLORIDA

cc:
*Plaintiffs*

**Manuel Vela**
28720 SW 170 Avenue
Homestead, FL 33030
305-323-9229
*Pro Se*

**Carla Vela**
28720 SW 170 Avenue
Homestead, FL 33030
305-323-9229
*Pro Se*

*Counsel for Defendant Sears*

**Patrick J. Quallich**
Wegman, Hessler & Vanderburg
6055 Rockside Woods Blvd.
Suite 200
Cleveland, OH 44131
216-642-36342
Email: pjquallich@wegmanlaw.com

**Yasir Billoo**
Golden & Grimes, LLP
9350 South Dixie Highway
PH II
Miami, FL 33156
305-670-4421
Fax: 305-670-4353
Email: ybilloo@goldengrimes.com